**Fred SWISS and Doris Swiss, Appellants,**

v.

**CABINET FOR FAMILIES AND CHILDREN, Appellee.**

No. 2000–CA–001298–MR.

Court of Appeals of Kentucky.

April 20, 2001.

James R. Redd III, Hopkinsville, KY, for Appellants.

Marianne Halicks, Mayfield, KY, for Appellees.

Before BUCKINGHAM, EMBERTON, and HUDDLESTON, Judges.

*OPINION*

BUCKINGHAM, Judge:

Fred and Doris Swiss appeal from an order of the Christian Family Court dismissing their petition for custody of the minor child, T.R.H. We find no error and thus affirm.

T.R.H. was born on September 13, 1991. On August 15, 1997, T.R.H. was placed with the Swisses as foster parents by the Kentucky Baptist Homes for Children, Inc. T.R.H. was in the custody of the Cabinet for Families and Children, and Kentucky Baptist Homes for Children, Inc., was the child-placing agency used by the cabinet in this case.

On February 9, 1998, the Kenton Circuit Court entered an order terminating the parental rights of T.R.H.'s biological parents. The order gave the cabinet the care and custody of the child and the authority to place her for adoption at that time. The Swisses were thereafter approved as adoptive parents and subsequently filed an application for adoption with the cabinet.[1]

On December 29, 1999, subsequent to T.R.H. making an allegation of sexual abuse, the cabinet removed T.R.H. from the Swiss home.[2] On January 20, 2000,

---

1. The application for adoption was rejected. There is no indication in the record that the Swisses took advantage of their avenues of appeal concerning this decision.

2. The sexual abuse report was not substantiat-

the Swisses filed their petition for custody in the Christian Family Court. In their petition, the Swisses alleged that they were the de facto custodians of T.R.H. and that it would be in the child's best interest for them to be granted custody of her. The court granted the cabinet's motion to dismiss the petition, holding that the Swisses lacked standing to bring their petition and failed to meet the statutory requirements to qualify as de facto custodians pursuant to KRS[3] 403.270. This appeal by the Swisses followed.

The Swisses argue on appeal that the trial court erred in dismissing their petition for custody due to lack of standing. They further argue that the court erred in determining that they failed to qualify as de facto custodians under KRS 403.270. We agree with the trial court on both issues.

■ First, we agree that the Swisses lacked standing to petition for T.R.H.'s custody. The applicable statute regarding de facto custodians states in relevant part as follows:

(1)(a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department

for Social Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.420, and 405.020.

KRS 403.270(1)(a) and (b).[4] The Swisses argue that they should have been allowed to prove de facto custodian status because the child was in their custody for a period of one year or more as a result of placement by the Department for Social Services. They assert that they were de facto custodians of the child and that they were therefore entitled to petition the court for the child's custody. *See* KRS 405.020(3).

We hold that foster parents such as the Swisses may not use the de facto custodian statutes to challenge the cabinet's custody of the child where the child was placed with the foster parents by the cabinet. KRS 403.270(1)(a) qualifies the time requirement by stating that "[a]ny period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included

---

ed.

**3.** Kentucky Revised Statutes.

**4.** The wording of this statute has been slightly amended effective July 14, 2000. The amendment of the statute has no bearing on this case.

in determining whether the child has resided with the person for the required minimum period." Further, KRS 403 .270(1)(b) states that "[o]nce a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section. . . ." As we read KRS 403.270(1)(a) and (b) together, we conclude that the intent of the statute was to apply to situations where the de facto custodian was involved in a dispute with a parent or parents. Thus, the Swisses lacked standing to file their petition. Their petition was merely an "end run" attempt to circumvent any remedy they may have had to challenge the denial of their adoption application.

■ We also agree with the trial court that the Swisses did not meet the statutory requirements under KRS 403.270 to qualify as de facto custodians. In order to achieve de facto custodian status, the Swisses would have to have "shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of" the child. KRS 403.270(1)(a). The trial court determined that the cabinet provided the primary financial support for the child. While the Swisses acknowledged this fact, they assert that they also provided financial support above and beyond that provided by the cabinet.

The issue, therefore, is whether a person must be the primary financial supporter of the child as well as the primary caregiver in order to achieve de facto custodian status. The cabinet argues that the word "primary" in the statute modifies not only the word "caregiver" but also the words "financial supporter." On the other hand, the Swisses argue that the word "primary" modifies only the word "caregiver" and not the words "financial supporter."

We agree with the trial court that the Swisses were required to show not only that they had been the primary caregiver for the child but also the primary financial supporter of the child in order to prove de facto custodian status. In short, we conclude that the trial court acted properly in dismissing the Swisses' petition for custody for lack of standing and also because they were not the child's de facto custodians.

The order of the Christian Family Court is affirmed.

ALL CONCUR.