**Les McCARY and Patricia McCary, Appellants**

v.

**William P. MITCHELL; Marla Sue Mitchell; B.E.M., A Minor; And Samuel Tyrone McCary, Appellees.**

No. 2007–CA–000322–DG.

Court of Appeals of Kentucky.

Aug. 1, 2008.

Aubrey Williams, Louisville, Ky, for appellants.

Melinda Martin Ormsby, Mayfield, KY, for appellees.

Before COMBS, Chief Judge; ACREE and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

This case originated from a petition filed by William Mitchell and Marla Sue Mitchell seeking to be appointed guardians and conservators of the estate of their maternal niece, B.E.M. At the time the petition was filed, the child resided with Les McCary and Patricia McCary, her paternal aunt and uncle, who filed a counter-petition requesting that they be appointed as guardians and conservators. After a hearing, the district court ordered that the Mitchells be the co-guardians and co-conservators of the estate of B.E.M., and that they take physical possession of the child after the completion of the 2005–2006 school year. An appeal was taken to the circuit court which affirmed. We accepted discretionary review.

This case presents a deplorable situation where the child's biological father, Samuel Tyrone McCary, admitted to complicity to murder the child's mother, Lisa Halverson, and was sentenced to twenty-five years' imprisonment. The tragedy for B.E.M. was exacerbated by the length of time between her mother's death and her father's incarceration for the murder.

At the time of her mother's murder in 2000, B.E.M. was four years old and Samuel was appointed guardian over B.E.M. and her financial estate. Although he was indicted in 2001, he did not admit his guilt until 2005. The Mitchells sought custody of the child in the Graves Circuit Court pending the outcome of the criminal charges; however, the court held that this was a guardianship action and remanded it to the Graves District Court. The district court denied the Mitchells' request for guardianship on the basis that Samuel was presumed innocent and retained his guardianship over his child and her estate. During the interim years between the murder and Samuel's guilty plea, the McCarys contend that Samuel relinquished custody to them and they were the child's primary care-takers and financial providers. During this same period, however, the Mitchells had consistent visitation with the child.

Following the resolution of the criminal charges, the Mitchells filed a petition seeking to terminate Samuel's guardianship and be appointed as guardians. The Mitchells' petition was granted and they

were to take physical custody of B.E.M. on May 12, 2006. However, the McCarys filed a notice of appeal to the circuit court and subsequently filed a separate action seeking custody. An *ex parte* hearing was held before a Special Judge who granted an order of stay and awarded temporary custody to the McCarys. Upon the Mitchells' motion to alter, amend, or vacate the order, the Special Judge recused and, after a second Special Judge was appointed, the order of stay and order of temporary custody were vacated and the child returned to the Mitchells on August 4, 2006.

■ Two issues are raised for our consideration. The first is one of law and concerns the application of KRS 403.270, the *de facto* custodian provision, to a guardianship proceeding under KRS 387.032. The second is purely a factual issue, specifically, whether the district court abused its discretion when it found that the child's best interest was served by appointing the Mitchells as guardians.

KRS Chapter 403 is applicable to actions for dissolution of marriage and child custody issues in the context of the dissolution. Specifically, its purpose is to "[m]itigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage[.]" KRS 403.110(3). However, as we noted in *London v. Collins*, 242 S.W.3d 351 (Ky.App. 2007), its custody provisions are referenced in other sections of the Kentucky Revised Statutes. In *London*, this Court held that a permanency order in a dependency action brought pursuant to KRS Chapter 620 that otherwise complies with KRS 403.270(2) and is based on the best interest of the child qualifies as a custody decree. Our reasoning was based on the requirement contained in KRS 620.027 that the custody decision be made utilizing the provisions of KRS Chapter 403 relating to custody and visitation.

The present case is distinguishable. It arose in the context of a guardianship proceeding under KRS Chapter 387 and, although the district court is to appoint any person or entity whose appointment would be in the best interest of the minor, no reference is made to KRS Chapter 403.

Moreover, KRS 403.270(1) itself contains language expressly limiting its application to KRS Chapter 403. It states in relevant part:

> (b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.822, and 405.020.

Had the legislature intended for the statute to apply in proceedings other than those specifically listed, it certainly could have done so. Because it did not include actions brought pursuant to KRS Chapter 387, we cannot construe it otherwise.

Our position is consistent with that expressed in *Swiss v. Cabinet for Families and Children*, 43 S.W.3d 796, 798 (Ky.App. 2001), wherein this Court held that the intent of the *de facto* custodian statute applied only "to situations where the *de facto* custodian was involved in a dispute with a parent or parents." This case concerns guardianship over B.E.M. and neither party is the parent of the child. Thus, we conclude that the district court and the circuit court properly held that as a matter of law, the McCarys could not be considered *de facto* custodians. The district court properly held that the McCarys

had no superior right to the child and that each was to be given equal consideration.

■ Our inquiry into whether the district court properly appointed the Mitchells as guardians is limited by the applicable standard of review. Because the issue is one of fact, we can set aside the district court findings only if clearly erroneous. Even if there may be doubt as to the correctness of the findings, we must affirm if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336 (Ky.2003).

It is apparent from the district court's well written opinion that thought and reflection preceded its drafting. The district court not only conducted an extensive hearing but also attended a meeting at a local McDonald's restaurant where the Guardian Ad Litem, the McCarys, the Mitchells, and B.E.M. were present. The district court was obviously impressed with both parties and their love for the child, which made its decision in the case notably difficult; however, it found as follows:

> It is the considered opinion of the court that Sue and Billy Mitchell are the most appropriate persons to take guardianship of the child. The court accepts the recommendation contained in the Supplemental Report of the Guardians ad Litem. This is no easy decision. Each party has tenaciously asserted a clear resolve, indicative of the depth of their feelings for this child. Each party is otherwise qualified. There is no paucity of love or devotion in either of the relationships. However, the court is impressed with the long-term familial stability which the Mitchells exhibit. Their three adult children are evidence of Billy and Sue's parental skills. It is in (B.E.M.'s) best interests that her home base be with Sue. In the absence of an innocent father, she needs a mother first and foremost. Sue aptly demonstrated

that commitment to care and devotion in her testimony and in the account depicted in the photographs. Furthermore, Lisa Halverson was Sue Mitchell's sister. No person can replace (B.E.M.'s) mother, but the court firmly believes that Sue is the person who comes closest.

As the two prior courts involved have observed, we likewise write with concern about B.E.M.'s future. Inevitably, she will discover the truth regarding her circumstances and must cope with the murder of her mother and guilt of her father. Properly, at the forefront of the district court's reasoning was the appointment of the most suitable guardians to assist B.E.M. in coping with the facts surrounding her mother's death as she matures. Based on the record, which includes the Guardian Ad Litem's recommendation that the Mitchells be appointed guardians and the district court's observations, we conclude that the evidence amply supports the appointment of the Mitchells as guardians.

We would be remiss if we did not urge the parties involved in this case to continue an amicable relationship in regard to B.E.M. Fortunately, this child has four loving and capable adults willing to assist her as she grows to adulthood. It is hoped that all will rid themselves of any ill will caused by the court battle over B.E.M. and be positive influences in B.E.M.'s future.

The opinion of the Graves Circuit Court affirming the Graves District Court is affirmed.

ALL CONCUR.