**Sandra SPREACKER, Appellant**

v.

**Denise VAUGHN; Mark Calliham; and Cabinet for Health and Family Services, Appellees.**

**No. 2011–CA–002011–ME.**

Court of Appeals of Kentucky.

Nov. 30, 2012.

Discretionary Review Denied by Supreme Court May 15, 2013.

Audelia J. Francis, Ashland, KY, for appellant.

Rhonda M. Copley, Ashland, KY, for appellee Vaughn.

Before CAPERTON, COMBS, and NICKELL, Judges.

## OPINION

COMBS, Judge:

Appellant, Sandra Spreacker, appeals from an order of the Greenup Family Court which determined appellee Denise Vaughn, the paternal Great–Aunt of the minor child (B.C.), to be the *de facto* custodian of that child. Spreacker contends that Vaughn does not meet the requirements for *de facto* custodian status under Kentucky Revised Statute[s] (KRS) 403.270. After our review, we affirm.

On July 2, 2010, Vaughn was baby-sitting B.C. for the weekend. When she changed his diaper, she noticed severe diaper rash. Vaughn contacted Spreacker about the rash. Spreacker requested that B.C. be returned home the next day. However, on the following day, Spreacker was arrested. The child's father was incarcerated at the time in the Boyd County Detention Center. Although Vaughn had physical custody of the child, she did not possess legal custody. Therefore, she filed a petition for juvenile dependency, neglect, and abuse in Boyd County.

Boyd District Court granted emergency custody to Vaughn on July 7, 2010. After holding a temporary removal hearing on July 12, the court granted her custody.

On July 27, Vaughn filed a motion to amend her petition to reflect that B.C. was medically neglected. The Boyd District Court granted her motion. At a pre-trial conference on August 5, the court ruled that temporary custody was to remain with Vaughn. At an adjudication hearing on September 14, B.C.'s parents admitted to neglect. The court then ordered B.C. to remain in the custody of Vaughn.

On January 3, 2011, Vaughn filed a petition for custody in her home county of Greenup. Spreacker filed a response and a motion to dismiss. The motion was denied, and a hearing was held on May 3, 2011. The Greenup Family Court found that Vaughn was a *de facto* custodian and awarded her custody of B.C. This appeal followed.

As an appellate court, we must defer to factual findings of the court as conclusive if they are not clearly erroneous and if they are supported by substantial evidence. See *Roberson v. Commonwealth*, 185 S.W.3d 634, 637 (Ky.2006). A finding of fact "is not clearly erroneous if it is supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky.App. 2005). We have defined *substantial evidence* as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky.1971); *O'Nan v. Ecklar Moore Exp., Inc.*, 339 S.W.2d 466, 468 (Ky.1960). Second, when the facts are supported by substantial evidence, our review is *de novo* to determine whether the rule of law was applied correctly. See *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (U.S.1996); *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998).

KRS 403.270 defines a *de facto* custodian as:

a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

The Greenup Family Court found that: (1) B.C. continuously resided with Vaughn; (2) B.C.'s parents provided *no* financial support; (3) Vaughn had ensured that the child received all necessary medical procedures; and (4) Vaughn was the primary financial supporter. The court acknowledged that B.C. had previously been given a medical card before custody was awarded to Vaughn. The court found that Vaughn received kinship money but that this money merely covered daycare expenses. Thus, the Greenup Family Court determined that there was substantial evidence to support that Vaughn met the definition of a *de facto* custodian.

■ Spreacker first argues that the Greenup Family Court abused its discretion when it granted *de facto* custodian status to Vaughn because she was not the primary financial supporter of B.C., citing the fact that she received Kinship Care and that B.C. had a Kentucky Medical Card. We disagree.

We have recently held that there is no authority in the Commonwealth withholding *de facto* status from a custodian who receives financial support provided by the government through public benefits rather

than having earned the monies through his or her own employment. *S.S. v. Commonwealth,* 372 S.W.3d 445, 448 (Ky.App.2012). Such a holding would disqualify the poor and disabled from ever attaining the status of a *de facto* custodian. There was evidence which showed that the governmental benefits supplemented what Vaughn was providing. The benefits did not supplant her primary support of the child.

Spreacker cites *Swiss v. Cabinet for Families and Children,* 43 S.W.3d 796 (Ky.App.2001), in which this Court agreed that foster parents were not the primary financial supporters because the *sole* support for the child came from the Cabinet. *Swiss* is clearly distinguishable from the case at hand. In this case, Vaughn has been providing more than half of the financial support of B.C. Vaughn receives some monies from Kinship Care covering daycare costs only; Vaughn provides all other financial support for B.C. In addition, the language cited from *Swiss* is dicta and addresses traditional foster care placements of the Cabinet—as distinguished from the situation in this case. Vaughn is ***not*** a foster parent; she was granted emergency custody of B.C., who was never in the custody of the Cabinet.

Spreacker also relies on the unreported cases of *Allen v. Allen,* 2003–CA–002386–MR, 2004 WL 1948741 (Ky.App. Sept. 3, 2004), and *Hudson v. Hudson,* 2009–CA–002150–ME, 2010 WL 2788274 (Ky.App. July 16, 2010). In *Allen,* no evidence was produced by the guardians regarding the monies expended for the children over and above the funds provided by the children's parents and by government assistance. Similarly, in *Hudson,* there was no evidence that the guardian was the primary financial supporter. The facts of this case are distinguishable. There is ample evidence that Vaughn provided financial support while B.C.'s parents provided none.

Statutory interpretation requires that the "plain meaning" of the statute controls. *See Wheeler & Clevenger Oil Co., Inc. v. Washburn,* 127 S.W.3d 609, 614 (Ky.2004). The language of KRS 403.270 requires that a *de facto* custodian serves as the "primary"—not the "sole"—caregiver and financial supporter. Although public assistance may have provided medical care for the child, substantial evidence supports the conclusion of the Greenup Family Court that Vaughn was B.C.'s primary caregiver and financial supporter.

■ Spreacker next argues that Vaughn did not have physical custody of the child for one year or more and, thus, that she is barred from becoming a *de facto* custodian. We disagree.

The District Court found that Vaughn met the first criterion of KRS 403.270 because she was the primary caregiver and financial supporter of the child. As to the second requirement of the statute, the child is under three years of age, and there is no evidence in the record that the Cabinet ever "placed" him. In fact, Spreacker concedes that "the minor child was not technically 'placed' by the Cabinet." Therefore, both statutory criteria have been satisfied.

■ The dissent, *sua sponte,* raises an issue relating to the provision of KRS 403.270(1) that prohibits calculating the statutory time period after a parent commences a legal proceeding. The thrust of the dissent is that because Spreacker responded in the course of the proceedings, she tolled the length of time. We note that Spreacker admitted in a pleading that she "did not commence a separate action to regain custody of her child, as required by KRS 403.270(1)(a) to toll the six-month period[.]" TR 71. Furthermore, CR 3.01 provides that "[a] civil action is commenced by the filing of a complaint with

the court and the issuance of a summons[.]" Spreacker admits that she has **not commenced** any proceedings, and we cannot conclude that she has done so when she expressly acknowledged that she has not.

We affirm the judgment of the Greenup Family Court.

NICKELL, Judge, concurs.

CAPERTON, Judge, dissents and files separate opinion.

CAPERTON, Judge, Dissenting:

With all due respect, I dissent from the majority opinion. Today the majority finds that a mother contesting a dependency, neglect and abuse action involving the custody of her child does not toll the running of the six-month period established in KRS 403.270(1) necessary for establishing a *de facto* custodian. I dissent because such interpretation promotes unnecessary litigation and is patently unfair.

*Sub judice*, Spreacker acted responsibly and sought assistance from Vaughn by seeking Vaughn's assistance in caring for the child for a weekend on or about July 2, 2010. Spreacker requested the return of her child but was arrested before her child could be returned. On July 7, 2010, Vaughn filed for temporary custody of the child. A court action followed in the form of a dependency, neglect and abuse action, wherein Spreacker responded to various allegations and sought return of her child.

A disposition was set on October 12, 2010, with the recommendation of the return of the child to Spreacker. The disposition was continued until November 9, 2010, and, due to Spreacker's inability to show sufficient progress on her case plan, the recommended disposition was changed to relative placement with a review set for January 4, 2011. On January 3, 2011, Vaughn filed a custody action alleging status as a *de facto* custodian pursuant to KRS 403.270(1).

KRS 403.270(1) states that, "Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period." At issue is the interpretation of the term "commence". I would find that the term commence, as used in the statute, means participation in an action litigating the custody of the child.

Certainly the legislature did not intend to impose, on what may well be an impoverished parent, the expense of filing a second legal action at his or her own expense when an action for dependency, neglect or abuse was already pending. In finding that the actions of the mother participating in the dependency, neglect or abuse proceeding involving the custody of her child are encompassed within the meaning of "commence", then the six-month period required by KRS 403.270(1) necessary for the establishment of a *de facto* custodian would be tolled.

Secondarily, finding the period of time the mother participated in the proceeding excluded from the six-month period conserves litigation. To conclude as the majority did would have required, *sub judice*, for Spreacker to initiate a second custody proceeding seeking the return of the child while a parallel custody proceeding was pending for dependency, neglect or abuse. Certainly our legislature did not intend to create such a litigious result. Additionally, had the period of time during which the dependency, neglect or abuse proceeding was ongoing been excluded, then a period of six months post-conclusion of the proceeding would have been necessary. This post six-month period would be consistent with the purpose of the statute in allowing

the custody of those children, with respect to whom the parents had relinquished efforts for their return, to be placed with a caring and loving family or caregiver. I do not see the actions of a mother contesting a dependency, neglect or abuse action as a relinquishment of efforts for the return of her child.

In conclusion, I dissent, and would find that the mother's participation in the custody proceeding fit within the definition of "commence" as that term is used in KRS 403.270(1). Consequently I would reverse and remand for additional proceedings.