v.

N.J.A.; Honorable Linda Bramlage, Boone County Family Court Judge; and Honorable Bailey Taylor, Appellees.

No. 2012–CA–000897–ME.

Court of Appeals of Kentucky.

April 12, 2013.

W. Josh Brown, Newport, KY, for appellant.

Chrissy M. Dunn, Cincinnati, OH, for appellee, N.J.A.

Before MOORE, NICKELL, and TAYLOR, Judges.

## OPINION

NICKELL, Judge:

J.K. ("Mother") gave birth to A.A.K.[1] ("Child") on May 16, 2011. She claims C.M. Huelsman,[2] her former husband

---

**1.** By Court policy, children in such matters are identified by initials only.

**2.** Huelsman is not a party to this action and has not testified as a witness.

whom she plans to remarry, is Child's father and listed him as such on Child's birth certificate. The question underlying this appeal is whether N.J.A., a man with whom Mother admits having an affair and living with for about fifteen months—until mere days before Child's birth—is entitled to know whether Child is his biological son. Despite being under order since November 18, 2011, to undergo genetic testing for herself and Child, neither has been tested, and due to Mother's machinations, N.J.A. has never seen the Child he believes he sired.

█ This case comes to us by way of Mother's challenge to an order entered by the Boone Circuit Court, Family Division, on May 11, 2012,[3] stating in its entirety:

This matter having been brought to the attention of the Court at hearing on May 11, 2012, on [N.J.A.'s] Motion for Finding of Contempt With Request For Emergency Hearing, and the Court being in all ways sufficiently advised;

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant, [J.K.], was previously ordered to undergo genetic testing for herself and the minor child, via Orders dated November 18, 2011 and April 11, 2012. Mother has failed to submit herself and the minor child to genetic testing pursuant to those Orders. [J.K.] is therefore hereby found to be in Contempt of Court, and is hereby Ordered to serve one hundred and eighty (180) days in the Boone County jail, unless she purges her contempt, by submitting herself and the minor child to genetic testing through the Boone County Child Support office at the following time: May 29, 2012.

The parties shall equally divide the cost of said DNA testing.

The Court reserves on [N.J.A.'s] Motion for Attorney'[s] fees.

The order was entered following a hearing on a paternity complaint filed by N.J.A. Neither Mother nor Child appeared for testing on the specified date; nor in response to prior court orders to do so. Mother alleges this is the first time a court has ordered genetic testing for a mother and child where there is no state action involved. She asserts on appeal that: 1) N.J.A. is a stranger to her marriage, does not qualify as a putative father under KRS[4] 406.021, and lacks standing to claim paternity; 2) Child is statutorily presumed to be Huelsman's son because he was born less than five months after their divorce became final; 3) ordering her and Child to submit to genetic testing violates their constitutional right to privacy; and, 4) the trial court committed palpable error by ordering her to serve the maximum penalty of 180 days in jail for failing to submit herself and Child for testing. Having reviewed the briefs, the record and the law, we affirm.

We begin by commenting on the construction of appellate briefs. Mother has raised four allegations of error, none of which comply with CR 76.12(4)(c)(v) which requires each argument to begin with "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Mother simply launches her arguments without any statement of preservation. This deficiency authorizes us to strike her brief or review her arguments under the manifest injustice standard. CR

3. The Hon. Linda R. Bramlage presided over most of this case, however, the motion for an order of contempt argued on May 11, 2012, was heard by visiting judge, the Hon. Bailey Taylor. He signed and entered the order of contempt that same day and it is this order from which this appeal emanates.

4. Kentucky Revised Statutes.

76.12(8)(a); *Elwell v. Stone,* 799 S.W.2d 46, 48 (Ky.App.1990). We choose to do neither because the outcome will be the same under any standard due to a lack of preservation which we discuss next.

■ We are a court of review. As such, when an issue has not been presented to the trial court, or a ruling on a specific issue has not been requested, we lack authority to review the claim. *Fischer v. Fischer,* 197 S.W.3d 98, 102 (Ky.2006); *Regional Jail Authority v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989) (internal citations omitted). CR[5] 52.04 provides the process for a litigant to request specific findings on essential issues. The rule specifies:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

In this case, Mother did not ask the trial court to make specific findings for three of the claims raised on appeal, and did not ask the trial court to consider a lesser punishment on the fourth claim. There being no rulings, we have nothing to review. *Tackett.*

■ Nevertheless, we write in hopes of ending what has heretofore been a vicious whirlpool—the trial court orders testing; Mother refuses to comply with the order; Mother files an appeal in this Court; we deny relief. A paternity action filed under KRS Chapter 406 is the means by which courts determine fatherhood. *J.A.S. v. Bushelman,* 342 S.W.3d 850, 857 (Ky.2011). KRS 406.011 specifies in relevant part that a:

child born during lawful wedlock, or within ten (10) months thereafter, is presumed to be the child of the husband and wife. However, a child born out of wedlock includes a child born to a married woman by a man other than her husband where evidence shows that the marital relationship between the husband and wife ceased ten (10) months prior to the birth of the child.

While Mother may presume her former husband to be Child's father because Child was born less than five months after her divorce from Huelsman became final on January 6, 2011, that presumption is rebuttable and KRS 406.011 bars neither **"the claim that a man other than her husband may actually be the father"** nor **"the right of an eligible party to have paternity legally determined.** It determines only whether or not the burden of proof in a paternity case will be influenced by the presumption of paternity." *Bushelman,* 342 S.W.3d at 855–56 (Emphasis added; footnote omitted). Thus, while Huelsman may be presumed to be Child's father, KRS 406.011 does not deny N.J.A. the right to a legal finding of whether he is—or is not—Child's biological father.

■ KRS 406.021(1) allows a putative father, as well as a mother or child, to file a complaint to determine paternity. When paternity is contested, as it is here, KRS 406.091(2) mandates "the child and all other parties **shall submit** to genetic testing upon a request of any such party which shall be supported by a sworn statement of the party, except for good cause." (Emphasis added). N.J.A. has made such a request and good cause has not been shown so as to defeat that request. KRS 406.081 directs:

> [t]he court, upon request of a party or on its own motion, **shall order** the moth-

**5.** Kentucky Rules of Civil Procedure.

er, child, and alleged father to submit to genetic tests. If the mother refuses for herself or on behalf of the child to submit to the tests, the court may resolve the question of paternity against her unless the action is brought by or is being prosecuted by an agency contributing to the support of the child.

(Emphasis added). KRS 406.081 gives the trial court not only the authority to order genetic testing, but the duty to do so. *Cain v. Cain*, 777 S.W.2d 238, 240 (Ky. App.1989).

With the foregoing in mind, we address Mother's claims that the trial court failed to determine whether N.J.A. qualifies as a putative father under KRS 406.021; whether he has standing to assert a claim of paternity; and, the impact of the rebuttable presumption of paternity. While the trial court has not discussed these allegations in any of its written orders, it has heard the argument more than once and it has never been asked to explain its rationale for ordering testing in a written order. Judge Bramlage originally ordered testing in November 2011 and Judge Taylor specifically commented upon the applicability of *Bushelman* and the absence of any question about standing before reaffirming the original order for testing and entering the order of contempt on May 11, 2012.[6] Rather than faulting the trial court for not addressing the standing argument in its written orders, Mother should have

requested a specific finding under CR 52.04 and that request should have begun with the order entered on November 18, 2011.

■ Furthermore, we are compelled to point out that a motion panel of this Court rejected these same arguments when it denied Mother's motion for intermediate relief on June 4, 2012. While we cannot apply the law of the case doctrine[7] in this case because the panel's decision was the equivalent of an interlocutory order, *Watkins v. Pinkston*, 190 Ky. 455, 227 S.W. 583 (1921) (reviewing denial of a temporary injunction), we find the motion panel's citation to *Bushelman* persuasive and instructive, albeit nonbinding.

The panel noted N.J.A. could overcome Huelsman's presumed paternity by presenting sufficient evidence of access to Mother to make him Child's father. N.J.A.'s uncontroverted testimony during the hearing convened on November 18, 2011, established: he and Mother lived together from February 2010 through May 9, 2011; they lived together during the time of conception and engaged in sexual relations; a home pregnancy test taken in his home and in his presence revealed the pregnancy on his birthday and was subsequently confirmed by a doctor; Mother told him repeatedly he was the father of the baby she was carrying; Mother pressured him to agree to give the baby up for

---

6. At the conclusion of the hearing, Mother's attorney did ask Judge Taylor to enter a final order reciting its opinion. Judge Taylor denied that request stating he was not entering a final order, but rather the equivalent of a discovery order that would not be final and appealable. Counsel never asked the court to explain its rationale for finding N.J.A. had standing to contest paternity.

7. "[A]n opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956). "[G]rounded on convenience, experience and reason[,]" it is said "that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation." *Id.* (Citation omitted).

adoption; he accompanied her to doctor's visits throughout the pregnancy and provided her food, clothing, shelter and medical care; he opposed both adoption and abortion; and, the relationship ended when he refused to give Mother his social security number to complete adoption paperwork. These facts support the conclusion that N.J.A. has standing under *Bushelman* to contest paternity and to request genetic testing.

We are aware of nothing requiring N.J.A. to prove he had exclusive access to Mother. Additionally, Mother's admission in her brief to this Court that she had a "brief affair" with N.J.A. is further support for the possibility that Child is N.J.A.'s son. Despite numerous opportunities to put on evidence, Mother has offered no proof of the frequency with which she had sexual relations with Huelsman, nor has she denied engaging in sexual relations with N.J.A. so as to exclude him as a potential father. This is especially true since both she and Huelsman told the Ohio court she was **not** pregnant on November 16, 2010, as part of the divorce proceeding initiated by Huelsman.[8] N.J.A. having moved for testing, the trial court has properly entered orders—four times—requiring Mother and Child to submit to genetic testing. Under KRS 406.081, the trial court had not only the authority to enter such orders, but the duty to do so. Mother having willfully disobeyed these orders—not once, but four times—holding her in contempt of court was entirely appropriate.

KRS 406.011 makes the **father** of a child, not the husband of the child's mother, financially liable for that child. While a child born during a marriage or within ten months of its cessation is presumed to be a child of that marriage, that presumption is rebuttable. *Bushelman* specifically holds:

> [a] "birth out of wedlock" under KRS 406.180 occurs when a child is born to woman who, regardless of her marital status, was not lawfully married to the biological father at the time of the child's conception or at the time of the child's birth. The child born under such circumstance is a "child born out of wedlock."

*Id.*, 342 S.W.3d at 864. Thus, until the testing occurs and confirms N.J.A. is Child's father or excludes him as a potential father, N.J.A. is being denied the right to prove his claim of paternity and Child may be being denied the opportunity to develop a relationship with his biological father.

Mother is correct that a significant fact distinguishes her case from *Bushelman*. Genetic testing occurred in *Bushelman* within two weeks of birth; nearly two years after Child's birth, no testing has occurred in this case—solely due to Mother's stalling. We note that Mother states in her brief she:

> will not submit herself or her child to a forced DNA genetic test by the Boone County Family Court absent constitutional justification. Mr. Huelsman supports her decision. [Mother's] family supports her decision.

No written statement of "constitutional justification" has ever been requested from the trial court as required for relief by CR 52.04—and no statement will be received at this juncture because the time has now passed for such a request. Mother has been ordered to submit herself and Child for testing four separate times. She could have requested a specific finding on this

---

8. According to N.J.A., a home pregnancy test taken on September 11, 2010, and later confirmed by a doctor, showed Mother was pregnant when she signed the separation agreement on November 16, 2010, stating "[w]ife is not now pregnant."

issue more than a year ago, but she failed to do so.

█ It speaks volumes to us that the threat of serving 180 days in the county jail for contempt of court was insufficient incentive for her to comply with the trial court's orders. "Contempt is the willful disobedience of—or open disrespect for— the rules or orders of a court." *Bailey v. Bailey*, 970 S.W.2d 818, 820 (Ky.App.1998) *citing Commonwealth v. Burge*, 947 S.W.2d 805 (Ky.1996). Mother's actions fall squarely within that definition. Her attempt to stymie and control this litigation cannot be tolerated by this Court. We discern nothing "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" in the trial court's finding of contempt nor in its imposition of a 180–day jail term for the willful disobedience of its orders. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citations omitted). Mother clearly holds the key to avoiding being jailed for contempt by making herself and Child available for testing.

As we read the record, the trial court gave Mother four opportunities to submit herself and Child for genetic testing. Each time, she chose not to comply with those orders. Mother has demonstrated an ongoing willingness to ignore the court's orders and as a result may be preventing her young son from developing a relationship with his biological father— something we will not know until the testing has been completed. Mother suggests she, Child and her ex-husband are a happy family but all we have to support that are her own self-serving assertions that are belied by the fact that Huelsman threw Mother out of the home, petitioned for the marriage to be dissolved, and told the Ohio court Mother was not with child at the time of the divorce.

For the foregoing reasons, we AFFIRM the order of contempt and required genetic testing entered by the Boone Circuit Court.

ALL CONCUR.