RENDERED: MARCH 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1248-MR

JAMIE PATTERSON AND
PAUL PENNINGTON                                               APPELLANTS


                        APPEAL FROM KNOX FAMILY COURT
v.                      HONORABLE STEPHEN M. JONES, JUDGE
                        ACTION NO. 21-CI-00274


MARTHA ALLEN AND
BRIAN LEDFORD                                                 APPELLEES


                                OPINION
                               AFFIRMING

                            ** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Married Appellants Jamie Patterson and Paul Pennington

("Fictive Kin")[1] appeal the judgment of the Knox Family Court vacating their de

facto custodianship status.  After careful review, we affirm.

---

[1] "'Fictive kin' means an individual who is not related by birth, adoption, or marriage to a child, but who has an emotionally significant relationship with the child[.]"  Kentucky Revised Statute 199.011(9).

# I.    BACKGROUND

The twin children involved, L.A. and L.A. ("twins"), were born on October 17, 2018, in Barbourville, Kentucky.  Shortly after their birth, the Cabinet for Health and Family Services ("Cabinet")[2] became involved with the twins because they were born substance exposed.[3]  On August 22, 2019, the Cabinet placed the twins with Fictive Kin.  On October 23, 2019, the Knox Family Court granted custody to the Cabinet and the Cabinet kept the primary placement with Fictive Kin.  Fictive Kin joined the Foster Program on July 22, 2020, and received their last payment through that program in May 2021.

On July 1, 2021, Fictive Kin filed a petition for custody requesting the court designate them de facto custodians of the twins (pursuant to Kentucky Revised Statute ("KRS") 403.270 and KRS 403.280) and requesting an emergency custody order (pursuant to KRS 620.060).  At the time of that filing, the twins were *two* years old[4] and had lived with Fictive Kin for one year, ten months, and six

---

[2] The parties refer to the state entity as the Department for Community Based Services and/or the Cabinet for Health & Family Services.  For clarity and consistency, we will refer to the state agency as the "Cabinet."

[3] As a result, the twins' biological mother, Appellee Martha Allen, lost custody of them shortly after their birth and was subsequently deemed unfit.  She did not file a brief in this appeal.

[4] At the February 16, 2022 hearing and the June 10, 2022 hearing, the twins' biological father represented that the twins were three years old at the time Fictive Kin filed for de facto custody.  However, that is not accurate.  The record reflects the children were born October 17, 2018, and Fictive Kin filed on July 1, 2021, making the twins two years, eight months, and 15 days old on July 1, 2021.

days.[5]  Of that time, the twins were with Fictive Kin for about ten months as fictive kin,[6] then ten months as foster parents,[7] then two months as fictive kin again.[8] After filing for de facto custodianship, the twins remained with Fictive Kin for another six months.[9]

In December 2020, the Cabinet started the twins' visitation with Appellee Brian Ledford ("Biological Father"), but his paternity was not established until June 24, 2021.[10]  On September 20, 2021, Biological Father filed a petition for custody.  The Knox Family Court consolidated the action initiated by Fictive Kin's petition and the action initiated by Biological Father's petition.

On October 13, 2021, the Cabinet filed a motion to dismiss Fictive Kin's petition.  The Cabinet argued Fictive Kin lacked standing to pursue custody of the twins as they had executed a foster agreement.  Fictive Kin asserted they were no longer enrolled with the Foster Program and had not received assistance from that program since May or June 2021.  On January 14, 2022, the court

---

[5] The actual timeframe was one year, ten months, ten days, but Fictive Kin testified during the February 16, 2022 hearing that the twins were with their biological mother for four of those days.

[6] August 22, 2019, to July 2020.

[7] July 2020 to May 2021.

[8] May 2021 to July 2021.

[9] July 1, 2021, to January 14, 2022.

[10] After the twins' birth, and until Ledford established paternity, a different man was presumed to be the father.

transferred custody to Biological Father. In February 2022, the Cabinet was dismissed as a party.

On February 16, 2022, the Knox Family Court held a de facto hearing, and on April 6, 2022, the court entered an order ("April 2022 Order") that found Fictive Kin proved their status as de facto custodians of the twins. The court found KRS 403.270 to be controlling.

> "[D]e facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period of six (6) months or more if the child is under three (3) years of age and for an aggregate period of one (1) year or more if the child is three (3) years of age or older **or has been placed by the [Cabinet]**. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

KRS 403.270 (emphasis added).

The April 2022 Order stated that:

> The [Fictive Kin] herein are the de facto custodians of the [twins], as they have demonstrated by clear and convincing evidence that they have been the primary caregivers and financial supporters of [the twins], now three (3) years of age, for more than one (1) year, and they have clearly established that the [twins] w[ere] placed with them by [the Cabinet] pursuant to KRS 403.270(1).

Six days after the Knox Family Court entered the April 2022 Order, Biological Father filed a motion to alter, amend, or vacate that order. Biological Father argued that the trial court erred because time as foster parents could not be counted toward the one-year custodial requirement of KRS 403.270. The court overruled that motion and set a hearing to determine visitation, custody, and/or parenting time. On June 2, 2022, Biological Father filed a motion to reconsider and a motion to cancel the hearing.

On June 10, 2022, the Knox Family Court held the hearing. At that hearing, Biological Father asserted that Fictive Kin had only accrued 273 days of time with the twins, not the one year required by statute. The court took testimony from the parties regarding the best interest of the twins.[11] At the close of that hearing, the court did not orally rule on the motion to reconsider but ordered mediation – within the next 29 days – on the issue of visitation alone.

On July 12, 2022, Fictive Kin sought to compel mediation and on August 17, 2022, the Knox Family Court entered an order directing Biological Father to "participate and negotiate in good faith" or "be held in contempt and sanctioned appropriately." On September 21, 2022, Fictive Kin filed a motion for

---

[11] Fictive Kin called Delone Trent, the former daycare provider for the twins, as a witness but before she could testify, the parties disagreed as to whether the hearing was temporary or a final "best interest" hearing. Fictive Kin wished to keep the hearing temporary, but Biological Father argued the court should consider the hearing final. The court stated, "If we're having witnesses, we're having a final hearing." Fictive Kin responded, "then I will not call Miss Trent."

contempt, incarceration, and attorney's fees due to Biological Father missing a scheduled mediation. On October 13, 2022, Fictive Kin moved to supplement the record with evidence of Biological Father's lack of fitness.

However, on September 14, 2022,[12] the Knox Family Court entered an order ("September 2022 Order") that sustained Biological Father's motion to reconsider, vacated the April 2022 Order, and dismissed Fictive Kin's action with prejudice. The September 2022 Order stated that Biological Father "worked a case plan and followed all recommendations of [the Cabinet] and [c]ustody was returned to him in January 2022, by the Knox County Juvenile Court." Again, the court found KRS 403.270 controlling, but – contrary to its April 2022 Order – determined that Fictive Kin could not establish the one-year statutory custodial requirement because the Cabinet placed the twins and because time in the Foster Program could not be counted toward de facto custodial time. The September 2022 Order dismissed the Fictive Kin's case with prejudice.

Despite that dismissal in September 2022, on October 14, 2022, the family court held a hearing on Fictive Kin's motions regarding Biological Father's contempt of court and unfitness to parent. Shortly after Fictive Kin began their

---

[12] The court signed this order August 10, 2022; it is unclear from the record why the circuit clerk did not stamp the order as "entered" until September 14, 2022. Also, Fictive Kin later asserted that as of September 20, 2022, the September 2022 Order was *not* in the online court tracking system nor had counsel received a physical copy from the circuit clerk. Fictive Kin argued that they did not receive notice of the September 2022 Order until the October 14, 2022 hearing.

argument, Biological Father stated that the court lacked jurisdiction because the court dismissed the action in September. Fictive Kin asserted that they did not receive the September 2022 Order from the circuit clerk and the court passed the issue to the next motion hour. That same day, October 14, Fictive Kin filed a notice of appeal with the family court challenging the September 2022 Order. Additionally, Fictive Kin filed a Kentucky Rule of Civil Procedure ("CR") 60.02 motion to vacate the September 2022 Order due to mistake or inadvertence. On October 24, 2022, Fictive Kin filed a notice of appeal with this Court challenging the September 2022 Order. On November 7, 2022, Fictive Kin motioned this Court to hold the matter in abeyance pending the resolution of the CR 60.02 motion before the Knox Family Court. This Court granted that motion.

In January 2023, the court denied Fictive Kin's CR 60.02 motion ("January 2023 Order"). The January 2023 Order noted the court's previous findings: the twins were returned to Biological Father in January 2022; Fictive Kin were initially deemed to be de facto custodians in April 2022; but after Biological Father filed a motion to reconsider, the court vacated the April 2022 Order because Fictive Kin failed to meet their burden for de facto custody. Again, the court found KRS 403.270(1) controlling. Referencing the juvenile actions, the court stated it had previously deemed Biological Father fit.

Fictive Kin appealed again, and this Court returned the matter to our active docket with the addition of the January 2023 Order. Fictive Kin now appeal (1) the September 2022 Order and (2) the January 2023 Order.

## II. ANALYSIS

"Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness." CR 52.01. Further,

> [t]rial courts are vested with broad discretion in matters concerning custody and visitation. *Futrell v. Futrell*, 346 S.W.2d 39 (Ky. 1961); *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000). In the absence of an abuse of discretion, we will not disturb a trial court's decision. *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009). . . . "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted); *see also Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994). The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

*Truman v. Lillard*, 404 S.W.3d 863, 869 (Ky. App. 2012).

On appeal, Fictive Kin argue the trial court abused its discretion by granting Biological Father's motion to reconsider[13] and dismissing the matter without first adjudicating all claims. Fictive Kin argue,

> [u]nder the current statutory scheme, non-parents may attain standing to seek custody or visitation of a child only if they qualify as de facto custodians, if the parent has waived her superior right to custody, or if the parent is conclusively determined to be unfit.

Fictive Kin do not challenge the court's finding that they did not establish de facto status but state that "[a]ssuming arguendo that [Fictive Kin] do not qualify as de facto custodians," the court still needed to – but failed to – address Biological Father's fitness and possible waiver. Thus, Fictive Kin request remand for the trial court to make findings on *fitness* and *waiver*.

To the contrary, Biological Father argues, and argued below, that because Fictive Kin did not qualify as de facto custodians, they had no standing to seek custody under KRS 403.270. Further, Biological Father argues that the court *did* find him fit and Fictive Kin did not properly preserve the waiver argument. We shall address each argument in turn.

---

[13] Fictive kin also argue that the court denied Biological Father's motion to reconsider at the June 10 hearing, but our review of the record did not locate an oral ruling on that motion at the hearing, and Fictive Kin did not indicate in its appellate brief where the court made such a ruling.

## A. De Facto Custodian Status

"Whether a nonparent is properly classified a *de facto* custodian is a question of law which we review *de novo*." *Hoskins v. Elliott*, 591 S.W.3d 858, 861 (Ky. App. 2019) (citation omitted). In relevant part, KRS 403.270(1) requires non-parents – who are attempting to establish de facto custody – to show by clear and convincing evidence that they have been the primary caregiver for, and financial supporter of, the child for one year or more if that child was placed with them by the Cabinet. Time within the Foster Program cannot be counted toward that one-year requirement. *T.C. v. Cabinet for Health & Family Services*, 652 S.W.3d 670, 676 (Ky. App. 2022) (citing *Swiss v. Cabinet for Families & Children*, 43 S.W.3d 796, 797 (Ky. App. 2001)). Also, that one-year custody clock stops ticking when a parent initiates a custody action. KRS 403.270(1); *Jones-Swan v. Luther*, 478 S.W.3d 392, 395 (Ky. App. 2015).

Here, the Cabinet placed the twins with Fictive Kin, but Fictive Kin could not establish the one-year statutory custodial requirement because much of their time with the twins was as foster parents and Biological Father stopped the Fictive Kins' custody clock when he petitioned for custody. However, as Fictive Kin do not challenge the family court's de facto finding, further review is not necessary.

## B.     Fitness

If a non-parent *does not* qualify as de facto custodian, he/she may still pursue custody by establishing the custodial parent either is unfit or waived his or her superior right to custody.

> When a non-parent does not meet the statutory standard of de facto custodian in KRS 403.270, the non-parent pursuing custody must prove either of the following two exceptions to a parent's superior right or entitlement to custody:   (1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence.

*Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010) (footnote and citations omitted).

Accordingly, this Court has interpreted *Mullins* to mean de facto status, waiver, and unfitness are three equal avenues for non-parents to seek visitation.  However, those avenues are not easy to find because in Kentucky, "[p]arents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Id.* (citation omitted).  Again, we review the trial court's factual findings for clear error, CR 52.01, and the decisions based on those facts for an abuse of discretion, *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009).

Here, Fictive Kin assert that the family court did not address Biological Father's fitness.  Fictive Kin did raise the matter of fitness in their

-11-

amended petition to the family court. Also, at the February 16, 2022 hearing, the court expressly reserved any issue of fitness. At the June 10, 2022 hearing, the court discussed the best interest of the twins and took limited testimony relating to Biological Father's fitness. On appeal, Fictive Kin argue that this matter should be remanded for the trial court to determine Biological Father's fitness.[14] However, the Knox Family Court did make such a finding.

> The September 2022 Order stated
>
> [t]he Biological [F]ather, [] worked a case plan and followed all recommendations of [the Cabinet] and Custody was returned to him in January 2022, by the Knox County Juvenile Court.
>
> . . .
>
> . . . [Biological Father] started receiving visitation in December of 2020, and started working his case plan in June of 2021. . . . From June 2021, until the present, [Biological Father], was active in visitation, working his case plan, participating in juvenile court and participating in this case.

---

[14] Appellate review favors analysis on the merits, as opposed to dismissing for minor procedural errors. *See Ready v. Jamison*, 705 S.W.2d 479, 481-82 (Ky. 1986) (shifting appellate policy from strict compliance with the procedural rules to substantial compliance). Still, we must note procedural concerns with this fitness argument: (1) if Fictive Kin felt the trial court's factual findings were insufficient, they should have motioned the family court for additional findings pursuant to CR 52.04; and (2) the September 2022 Order became final ten days after entry (and the court lost jurisdiction of the matter at that time). CR 59.05. However, Fictive Kin did not contest the September 2022 Order until 30 days after entry. Biological Father does not challenge these procedural issues on appeal; therefore, we do not address them further and hope to give the parties closure on the merits.

The January 2023 Order repeated those findings and stated that "[t]he Court previously found [Biological Father] fit and custody of the [twins] was returned to him in January 2022 through the juvenile actions." We are dependent on the trial court's orders for its interpretation of the evidence in the juvenile proceedings as those are not part of the record on this appeal. Certainly, we would have preferred a more thorough discussion of Biological Father's fitness – particularly in light of indications in this record that biological mother was living with Biological Father and involved in parenting the twins despite the termination of her parental rights – but, that does not negate (a) that the trial court found the Biological Father to be fit, (b) that the legal conclusion was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles, and (c) that it was not based on clearly erroneous facts.

In fact, Fictive Kin *do not* contest the court's factual findings that Biological Father worked a case plan, followed the recommendations of the Cabinet, and that the same court (as the juvenile case) returned custody to Biological Father in January 2022. While these facts are not extensive, the court is not required to make findings about every possible piece of evidence. "[W]e do not believe a trial court's findings of fact must specifically mention each and every piece of evidence or argument of counsel to pass muster. Such a requirement

-13-

would be unduly burdensome on the courts and litigants and serve no justifiable purpose." *Truman*, 404 S.W.3d at 867-68.

Here, the family court clearly stated that Biological Father worked his case plan with the Cabinet, stayed active in the twins' lives through visitation, and found him fit to parent, granting him custody in January 2022. The family court entered a written order wherein it engaged in the required "good faith effort at fact-finding," *Keifer v. Keifer*, 354 S.W.3d 123, 125 (Ky. 2011) (internal quotation marks and citation omitted)). The family court made its finding – that Biological Father was fit – on unchallenged facts. As such, we discern no clear error or abuse of discretion by the family court.

## C.    Waiver

Fictive Kin also argue that the court should have considered the issue of waiver by Biological Father of his superior right to custody as a parent. However, "[w]e are a court of review. As such, when an issue has not been presented to the trial court, or a ruling on a specific issue has not been requested, we lack authority to review the claim." *J.K. v. N.J.A.*, 397 S.W.3d 916, 919 (Ky. App. 2013) (citing *Fischer v. Fischer*, 197 S.W.3d 98, 102 (Ky. 2006) and *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989)). Here, Fictive Kin's argument that they may attain standing to seek custody because Biological Father waived his superior right to custody was not argued before the Knox Family Court.

-14-

Fictive Kin did not mention waiver in its petition, amended petition, nor its CR 60.02 motion. If Fictive Kin made that argument during the hearings before the family court, we were unable to locate those arguments, and Fictive Kin did not direct us to their preservation as required by Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4). Without any relevant rulings to review, we lack the authority to analyze the waiver argument on appeal. *See J.K.*, 397 S.W.3d at 919 (citation omitted); *see also Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (quoting *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) ("Indeed, an appellate court is 'without authority to review issues not raised in or decided by the trial court.'")).

## III. CONCLUSION

First, on appeal, Fictive Kin did not contest the family court's conclusion that they "failed to meet [their] burden to be granted de facto custodian." Second, Fictive Kin did not argue that the family court's factual findings were clearly erroneous, nor did they establish that the court's legal conclusion (that Biological Father was fit) was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Lastly, the issue of parental *waiver* was not presented to the family court and therefore was not proper for appellate review. Accordingly, the judgment of the Knox Family Court is AFFIRMED.

-15-

ALL CONCUR.

BRIEF FOR APPELLANTS:

Brandon West
Barbourville, Kentucky

BRIEF FOR APPELLEES:

Eric M. Dixon
Corbin, Kentucky