Jennifer YOUNG, Appellant,

v.

Brenden HOLMES, Appellee.

No. 2008–CA–001365–MR.

Court of Appeals of Kentucky.

Aug. 28, 2009.

Katherine A. Ford, Louisville, KY, for appellant.

No brief for appellee.

Before CAPERTON, THOMPSON, and WINE, Judges.

## OPINION

CAPERTON, Judge.

Jennifer Young appeals from an order of the Jefferson Family Court whereby the court ordered the parties' minor child, Z.H. (hereinafter, the child) to attend St. Athanasius School in Louisville, KY for the academic year of 2008–09. Young asserts that the court's order violates her First Amendment right to religious freedom and that the court could only appropriately order the child to attend St. Athanasius by

finding that he had special needs that would require him to attend private school. We disagree and accordingly affirm the Jefferson Family Court.

At the time of the court order of June 18, 2008, the child was five years old and the parties, who shared joint custody, could not reach an agreement as to where the child should attend kindergarten in the fall.[1] The court held a hearing on the matter on May 23, 2008.

Brenden Holmes testified that he desired his son to attend St. Athanasius in Louisville while Young desired the child to attend Silver Street Elementary school in New Albany, Indiana. Holmes lives with his parents in Louisville, regularly attends St. Athanasius Church with the child, and had the child baptized there without permission from Young. All of the child's extended family including the maternal grandparents resides in Louisville. Young works in Louisville close to St. Athanasius. She is hoping for a promotion but has no idea where her new position may be located or when her promotion might occur.

Holmes testified that he would assume all financial responsibility for the child's education costs if the child attends St. Athanasius as this would be the best choice for the child because of the school's test scores and the variety of extracurricular activities for the child as he gets older. Holmes also testified that St. Athanasius offered an on-site after-school program to help students with their homework. Holmes next testified that when he visited Silver Street Elementary school in New Albany, Indiana, he learned that the school's test scores were lower and that it did not offer an on-site after-school program. Holmes did not look at any public schools in Kentucky but did look at the schools Young preferred. Holmes' testi-

mony was wholly based on his past experience; he felt that the education and overall experience provided by private schools in Kentucky was superior to public schools.

Young testified that she had moved to New Albany, Indiana. She wanted the child to attend public school and preferably to attend Silver Street Elementary in New Albany, which is down the street from her new home. She testified that Silver Street Elementary offers extracurricular activities and that the child could ride a bus to the YMCA after-school program. According to Young, Silver Street Elementary was a smaller school with a smaller teacher-to-student ratio and that would be more beneficial to their son. Young did not visit any public schools in Kentucky but did visit St. Rita in Louisville. Young testified that she felt "judged" for not being Catholic at St. Athanasius but not at St. Rita. She testified that she was concerned that if her child were to attend a Catholic school but was not a practicing member of the faith that he would be singled out when the children had religious studies.

In light of the testimony presented, the trial court determined that as the parents sharing joint custody could not reach a decision, then the court would resolve the conflict based upon the best interest of the child.

The trial court found that based on the testimony and the evidence presented it was in the child's best interest to attend kindergarten at St. Athanasius. The court noted that it was provided with limited documentation regarding the schools' academics, performance, and environment. However, based on the parent's testimony, the child knew some of the other children who may be attending school at St. Athanasius, the location was more convenient

1.  The parties could not reach an agreement on this issue even after mediation.

for the parties, and when combined with the academics, extracurricular activities, and on-site after-school program, should provide a positive environment.

Further, the court reasoned that all of the benefits derived from the child attending St. Athanasius would not require travel to a secondary location. By the child attending St. Athanasius, the extended family of both parties could attend functions at the school involving the child. The court noted that many non-Catholic students attend parochial schools and the court empathetically stated that it did not dictate the religious upbringing of the child, but reiterated that the decision to send the child to St. Athanasius was based on the best interest of the child. It is from this order that Young appeals.

Young presents two arguments on appeal.[2] First, the court order violates her First Amendment rights because it requires Young to send her child to a religious school against her wishes. Second, the court order did not find that her child has any special needs which would make public school unsuitable for him.

■ At the outset we note that the overriding principle, as correctly determined by the trial court, is that the best interest of the child be served by the trial court's decision. *Burchell v. Burchell,* 684 S.W.2d 296, 300 (Ky.App.1984). As to what constitutes the best interest of the child, any factual findings are reviewed under the clearly erroneous standard; any decisions based upon said facts are reviewed under an abuse of discretion standard. *See* 1 Ralph S. Petrilli, *Kentucky Family Law* § 26.22 (1988)(citing *Largent*

*v. Largent,* 643 S.W.2d 261 (Ky.1982); *Enlow v. Enlow,* 456 S.W.2d 688 (Ky.1970); *Whisman v. Whisman,* 401 S.W.2d 583 (1966); *Hinton v. Hinton,* 377 S.W.2d 888 (Ky.1964)).

■ In support of her first argument, that the trial court's order violates her First Amendment rights, Young fails to cite any case law in support thereof to this Court. After our review of the record *sub judice,* we believe *Burchell, supra,* to be dispositive of this appeal. In *Burchell,* our Court undertook an analysis of joint custody.

Joint custody is an arrangement whereby both parents share the decision making in major areas concerning their child's upbringing....

If, as in the instant case, the parties to a joint custody agreement are unable to agree on a major issue concerning their child's upbringing, the trial court, with its continuing jurisdiction over custody matters, must conduct a hearing to evaluate the circumstances and resolve the issue according to the child's best interest. Once the parents have abdicated their role as custodians to the trial court, its decision is binding on the parties until it is shown that the decision is detrimental to the child physically or emotionally, or is no longer in his best interest.

*Id.* at 299–300. *See also Pennington v. Marcum,* 266 S.W.3d 759 (Ky.2008); *Drury v. Drury,* 32 S.W.3d 521 (Ky.App.2000); and *Hazel v. Wells,* 918 S.W.2d 742 (Ky. App.1996).

In support of the reasoning used by our Court in *Burchell,* we turn to the case of

**2.** Holmes failed to file an appellee brief. CR 76.12(8)(c) permits this Court the following options in this situation: "(i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." We have elected option one and have premised our analysis on her version of the facts and issues.

*Matter of Marriage of Debenham,* 21 Kan. App.2d 121, 896 P.2d 1098 (1995), where the Kansas Court of Appeals was presented with a similar fact situation. Citing to our decision in *Burchell,* the court in *Debenham* concluded that the trial court's order which utilized the best interest of the child standard and explicitly disclaimed any religious preference by choosing the parochial school did not violate the First Amendment. *Id.* at 1100.

While we believe that the explicit disclaimer of the trial court is helpful in understanding its decision, it is not dispositive. Absent a religious disclaimer, Young would still bear the burden of proving that the decision of the trial court was based upon religious interests and such impropriety would not be presumed merely because the school selected had a religious connotation in addition to its academic offerings.

In the case *sub judice,* the parties as joint custodians could not agree on a major issue concerning the education of the child. Their failure to agree ultimately resulted in their abdication of such a decision to the trial court. After conducting a hearing on the issue, the trial court made a determination based upon the best interest of the child. There was substantial evidence to support the trial court's decision and the trial court made neither legal error nor violated the First Amendment.

■ In support of her second argument, that the trial court was required to find that her child had special needs that made public school unsuitable for him before ordering the child to attend private school, Young directs this Court to *Miller v. Miller,* 459 S.W.2d 81 (Ky.1970), and *Smith v. Smith,* 845 S.W.2d 25 (Ky.App.1993).

According to Young these cases mandate a preference for public school over private school, unless the child has special needs which cannot be met by the public

school system. Our reading of the cases yields a much different result. In *Miller* and *Smith,* the trial court imposed upon the appellant the additional cost of private education, to which the appellant objected. In the matter *sub judice,* Holmes has freely undertaken the additional cost of private education. The question before our Court is how the best interest of the child is served when the parties are presented with multiple educational opportunities for the child. Thus, *Miller* and *Smith* are not controlling.

In light of the aforementioned reasons we affirm the Jefferson Family Court.

THOMPSON, Judge, concurs.

WINE, Judge, concurs in result and files separate opinion.

WINE, Judge, concurring in result.

I concur with the well-reasoned opinions not only of the majority of this panel, but of the trial court as well. However, there are some issues raised by Ms. Young I feel compelled to address.

It is unfortunate that the parents' inability to compromise has resulted in a civil court making a decision in a matter which clearly falls within the core of parental responsibility—where a child is to be educated. The conduct of these parties is a harbinger of future court intervention in many matters which are personal and unique to a family.

It is not uncommon for parents of different religious denomination to marry. The decision as to what faith to raise a child or children is usually made after much discussion, both within the family and with respective church counselors.

Ms. Young has confused attending a parochial school with what faith beliefs their son will practice. Every other Sunday,

their son will have the opportunity to worship at the church she attends. Likewise, their son will have the opportunity to worship at the Catholic church Mr. Holmes attends. Both parents will have the opportunity to teach their son about the richness of their particular faith tradition.

Ultimately, the child will make a decision as to where he prefers to worship. Hopefully both parents will respect that decision. Based upon his parents' "walk" and "talk", he may choose where his mother or father worship, or he may reject both.

The trial court was responsible only for deciding where the child will attend school. Ms. Young and Mr. Holmes are still responsible for the moral compass which will direct their son's life.