RENDERED: JUNE 13, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0118-MR

ZOEY LYNN SEWELL　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　APPEAL FROM MEADE CIRCUIT COURT
HONORABLE JOHN M. MCCARTY, SPECIAL JUDGE
ACTION NO. 22-CI-00229

DAVID MICHAEL REESE　　　　　　　　　　　　　　　　APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, EASTON, AND L. JONES, JUDGES.

CALDWELL, JUDGE: Zoey Lynn Sewell ("Mother") appeals from a judgment of the Meade Circuit Court designating David Michael Reese ("Father") as the primary residential parent of the parties' minor child ("Child"). We affirm.

## FACTS

Mother and Father were married in 2018. Child was born in 2019. Mother, Father, and Child lived in the marital residence in Glasgow, Barren County, Kentucky until Mother and Father separated in late September 2022.

When the parties separated, Mother went to stay with her parents in Cumberland County, Kentucky. Mother called Father to ask about Child and to request to see Child a couple of days later. Father simply told Mother that Child was with him. Father admittedly did not let Mother see Child for about three weeks – until a court order could be entered. Father stated he did not let Mother see Child during this period because he feared she would run off with Child.

Since the parties' separation, Mother has remained in Cumberland County and Father has lived in Meade County. The parties' homes are located about a three hours' drive apart. Both Mother and Father have family members, including parents and siblings, who live near them.

Father filed for divorce in Meade Circuit Court ("the trial court") in October 2022. Mother filed a response shortly thereafter. Both parties were represented by counsel.

In November 2022, the trial court entered a temporary agreed order granting the parties temporary joint custody and setting an alternate week, equal timesharing schedule. This agreed order also required that "the party not in possession of the child shall be afforded a nightly phone call with the child" facilitated by the other parent between the hours of 6 and 8 PM Eastern Standard Time. Also, the agreed order stated each parent shall notify the other about which childcare providers were used.

In late February 2023, the trial court entered an order noting the parties had requested a hearing before the Domestic Relations Commissioner ("DRC"). The order stated a hearing before the DRC was scheduled for June 29th. The order also stated a non-refundable $240 fee for the cost of the DRC hearing must be paid twenty-four hours prior to the hearing and failure to pay the fee prior to the hearing date would result in cancellation of the hearing.

Both parties filed witness and exhibits lists in June 2023. On June 29, 2023, Father filed a notice and motion requesting he be named Child's primary residential custodian so Child could attend preschool in Meade County starting in August. The notice stated the motion would be made to the DRC on July 6, 2023. Father also filed a supporting affidavit alleging Mother had violated the agreed order by failing to facilitate timely phone calls between him and Child during her parenting time and by refusing to notify him about childcare providers.

A few days later, Mother filed a Motion for Immediate Relief and Hearing. She alleged that on June 28th, her counsel received a phone call from the DRC, who said the hearing scheduled for June 29th was cancelled due to failure to pay the DRC hearing fee 24 hours in advance. Mother also alleged the DRC recounted contacting Father's attorney the day before (on June 27th) to check on the status of the fee. Mother asserted her attorney advised the DRC that Mother would offer to pay the entire fee and be reimbursed for Father's half of the fee later

so the matter could be heard as scheduled – but the DRC advised this was not possible and the hearing would have to be rescheduled for a few months later. (We note no affidavit was attached to her motion to support these factual allegations.)

Mother contended the DRC's cancelling the hearing was in violation of Rule 7.02 of the 46th Circuit's Domestic Relations Rules, which provided the DRC fee must be paid no later than 5 days after the hearing. She also asserted the DRC had improperly failed to communicate with her attorney despite communicating with Father's attorney prior to cancelling the hearing. She alleged the DRC's cancellation of the prior hearing along with the immediate scheduling of Father's motion to be named primary residential custodian created concerns about impropriety and the DRC not being impartial. Mother requested the trial court grant her immediate relief by revoking the referral to the DRC and setting the matter for a hearing before the court. Mother's notice indicated her motion would be heard by the trial court on July 6, 2023.

On July 11, the trial court entered an order stating that a DRC hearing would be conducted on August 10, 2023 – again stating the DRC fee must be paid 24 hours in advance. The trial court did not enter any written order resolving Mother's motion for immediate relief at that time. Moreover, other documents filed by both parties in the record state the DRC declined to hear Father's request

-4-

to be named primary residential custodian on July 6th and instead passed the matter to the scheduled August hearing.

On August 10, 2023, the DRC conducted the evidentiary hearing as scheduled. The parties agreed to joint custody during the hearing. Both parties presented evidence regarding who should be the primary residential custodian – including testimony from the parties and other family members but not from Child, then just four years old.

Father testified Child could go to preschool in Meade County starting that August. Mother testified Child could go to Head Start in Cumberland County on alternate weeks. The DRC orally expressed concerns that Head Start might not permit alternate-week attendance and Mother's counsel suggested Mother meant day care when she said Head Start.

The DRC orally praised the parties for doing well overall with an equal timesharing agreement. But she noted continued equal timesharing was not likely to work with Child in school and the parties' living three hours apart. She also noted some concerning behavior on each parties' part – including Father not allowing Mother to see Child for about three weeks, Mother not complying with the order which specifically set forth a time for Child to speak on the phone with Father during Mother's parenting time, Mother's failing to notify Father of some of Child's dentist and doctor appointments, and Mother's not having previously told

Father of her plans to enroll Child in Head Start.  At the end of the hearing, the DRC took the matter under advisement.

In September 2023, the DRC filed with the trial court a recommendation for joint custody with Father to be the primary residential parent. The DRC noted Father lived in Meade County and Mother lived in Cumberland County and she discussed several statutory factors in her written recommendation.

The DRC recommended Mother have timesharing under local guidelines with the exception of getting overnights Monday through Friday due to the distance between the parties' residences.

Mother filed objections and exceptions to the DRC's recommendation.  She pointed out the DRC's recommendation wrongly stated the parties and Child undisputedly lived in Meade County before their separation.  She asserted it was undisputed the parties and Child had lived in Glasgow in Barren County prior to their separation.  She argued the DRC's recommendation was problematic in several other ways, largely mirroring the allegations of error asserted in her appellant brief.  Mother asked the trial court to name her the primary residential custodian and she requested a hearing on her exceptions. Father filed a motion to confirm the DRC report.

In early November 2023, the trial court conducted a hearing in which it reserved ruling on both Father's motion to confirm the DRC report and on

Mother's exceptions. The court orally stated it would review the file but did not see a need to conduct a trial *de novo*. The court indicated it would hear arguments on Mother's objections and exceptions two weeks later.

After another hearing was held on November 16th, the trial court entered an order a few days later which dissolved the marriage but reserved child custody and timesharing issues for later determination. In January 2024, the trial court issued an order regarding custody and timesharing in which it mostly confirmed the DRC's recommendation. It found no reason to disagree with the DRC's recommendation for the parties to have joint custody.[1] Also, it designated Father as the primary residential parent and stated Mother was entitled to timesharing under local guidelines except for not having overnights Monday through Thursday. (In other words, the trial court confirmed the DRC's recommendation except for amending the DRC's recommendation to allow Mother to have Friday overnights.) The trial court's order was designated as final and appealable with no just cause for delay. Mother filed a timely appeal.

---

[1] The trial court stated it had no issues with the DRC's findings or reasoning, after noting the DRC concluded it was in Child's best interests for his parents to "share" custody. (Page 2 of Order under Appeal, R., p. 79). We construe this statement as the trial court's adoption of the DRC's recommendation that the parties have joint custody.

**Standard Governing a Trial Court's Initial Custody Decision, Including Designation of a Primary Residential Parent**

When making its initial child custody decision (including designation of a primary residential parent when parents have joint custody), the trial court must determine the best interests of the child pursuant to KRS[2] 403.270, giving each parent equal consideration and considering all relevant factors. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008).

**Standard of Review**

We review a child custody decision (including designation of a primary residential parent) for abuse of discretion and any supporting factual findings for clear error. *Id.*; *Gonzalez v. Dooley*, 614 S.W.3d 515, 519 (Ky. App. 2020). *See also Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009) ("As to what constitutes the best interest of the child, any factual findings are reviewed under the clearly erroneous standard; any decisions based upon said facts are reviewed under an abuse of discretion standard."). Moreover, factual findings may not be set aside as clearly erroneous unless they are not supported by substantial evidence. *Gonzalez*, 614 S.W.3d at 519.

With these standards in mind, we consider the party's arguments on appeal. Mother raises questions about the fairness and/or impartiality of the DRC.

---

[2] Kentucky Revised Statutes.

She also argues the DRC's recommendations and the trial court's conclusions about custody and timesharing are not supported by sufficient evidence. In response, Father argues Mother is not entitled to relief on appeal due to lack of compliance with appellate briefing rules, failure to cite supporting authority, and failure to preserve issues in his estimation. Mother did not file a reply brief to respond to these assertions or correct any deficiencies in her appellant brief. First, we consider Father's assertions about Mother's alleged lack of compliance with appellate rules.

**We Decline to Impose Sanctions for Mother's Failure to Provide More Specific References to the Record**

Father points out Mother's appellant brief fails to provide specific references to the record showing where these issues were preserved for our review. *See* RAP[3] 32(A)(3)-(4). As he notes, Mother generally asserts in her brief that all appellate issues were preserved in her prehearing statement and motion for intermediate relief and at the hearing on her objections and exceptions to the DRC's recommendation. But Mother does not provide citations to specific page numbers in the written record or to specific portions of video-recorded hearings

---

[3] Kentucky Rules of Appellate Procedure.

identified by date and time in her preservation statement or elsewhere in the argument section of her brief. *See* RAP 31(E)(3)-(4); RAP 32(A)(4).[4]

Certainly, an appellant should cite to specific portions of the record – identified by page numbers in the written record or specific date and time stamps in video-recordings – when pointing out how issues were preserved for our review. After all, an appellate court is not responsible for searching the record to see if issues were properly preserved for review. *See, e.g.*, *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Also, an appellate court is not obligated to consider issues not previously raised to the trial court. *See McWhorter v. Baptist Healthcare System, Inc.*, 686 S.W.3d 142, 144 (Ky. 2024) (addressing only those appellate issues which were also raised to the trial court).

Nonetheless, although providing more specific references to the record in the appellant brief would have been advisable, we easily located Mother's motion for immediate relief and her exceptions within the relatively brief written record. Moreover, we have reviewed the videotaped hearings provided to us in the record and we are satisfied that the basic issues raised in this appeal were also raised to the trial court based on our review.[5] Thus, we review the issues

---

[4] Mother does cite to a few specific pages in the written record in her statement of facts, identifying where a few salient documents are located. Neither party's briefs refer to any specific portions of video-recorded hearings, however.

[5] Mother also states she preserved issues for review in a prehearing statement. Assuming Mother is referring to the prehearing statement filed in this Court, such prehearing statements do not

raised in Mother's brief and we leniently decline to impose any sanctions for

Mother's failure to fully comply with our appellate briefing rules. *See* RAP

31(H)(3).[6]

First, we address Mother's arguments about appearances of

impropriety and/or lack of impartiality on the part of the DRC.

**No Reversible Error Based on Appearance of Impropriety or Lack of Impartiality on DRC's Part**

Mother's first argument as stated in her appellate brief is: "The

Appearance of Impropriety Regarding the Domestic Relations Commissioner's

Relationship with Appellee's [Father's] Counsel Violates Canon 2 of the Kentucky

Code of Judicial Conduct."

Father contends this issue was not properly preserved. He suggests

that any argument the DRC should have been disqualified was not preserved by

Mother's motion for immediate relief. He notes Mother asked for the case to be

---

raise issues to the trial court, so they do not preserve issues for appeal. *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014) ("[T]he critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court.").

[6] We caution Mother's counsel to take better care to comply with appellate briefing rules in the future as we are not obligated to leniently overlook non-compliance. We are unaware of similar instances of Mother's counsel having failed to comply with our Rules of Appellate Procedure by failing to provide specific citations to the record. However, Mother's counsel (Donald L. Wilkerson, III) is listed as one of the attorneys for the appellants in *McWhorter*, in which our Supreme Court noted some issues raised by the appellants on appeal were not raised to the trial court and were thus not preserved for appeal, despite the appellant brief's indicating all appellate issues had been preserved. *See* 686 S.W.3d at 143-44.

heard by the trial court rather than the DRC. And he asserts nothing in the record shows the trial court ever ruled on this motion. He contends this court cannot review this issue because Mother never obtained a ruling on this motion, citing *Baker v. Ryan*, 967 S.W.2d 591, 593 (Ky. App. 1997).

We disagree. While Mother may have never formally filed a motion to disqualify the DRC or to request her recusal,[7] Mother clearly expressed concerns about the DRC's impartiality or an appearance of impropriety in her motion for immediate relief and in her objections and exceptions to the DRC's recommendation. Moreover, Mother clearly requested the evidence be heard by the trial court rather than the DRC in her motion for immediate relief. And while Mother does not point to a written court order resolving her motion for immediate relief, the trial court clearly denied her request for it to hear evidence itself based on our review of video-recorded hearings. The trial court judge orally stated the court would not be hearing evidence or conducting a trial *de novo* but stated the court would review the case file and consider the party's arguments.

While we conclude issues about the DRC's alleged appearance of impropriety and/or lack of impartiality and whether the evidence should be heard

---

[7] *See* Kentucky Supreme Court Rules, Kentucky Code of Judicial Conduct, Application Section II, Comment I.

by the trial court instead were preserved, Mother is nonetheless not entitled to relief based on our review of the record.

Mother cites authority indicating it is improper for a judge or trial commissioner to hear evidence or determine issues if the judge or trial commissioner has a close relationship with an attorney who practices before the judge or with an employee of that attorney. *See Commonwealth v. Brandenburg*, 114 S.W.3d 830, 833 (Ky. 2003); *O'Hara v. Kentucky Bar Ass'n*, 535 S.W.2d 83, 83 (Ky. 1975). Moreover, Mother asserts Father's trial counsel and the DRC apparently had a close relationship, which in her view presents an appearance of impropriety.

Mother points out Father sought modification of the parties' temporary timesharing arrangement shortly after the originally scheduled DRC hearing was suddenly cancelled – with Father's attorney (unlike Mother's attorney) allegedly being offered an opportunity to pay the DRC fee in time to allow the scheduled hearing to proceed. She also mentions that Father's motion was noticed for a hearing before the DRC just seven days in advance.[8] Mother states that from that point forward, she "questioned the fairness of the tribunal, especially given the fact that [Mother] and her counsel were foreign to the jurisdiction."

---

[8] However, the DRC ultimately declined to hear evidence regarding Father's motion for modification of the temporary timesharing arrangement until the final hearing which occurred on August 10, 2023, based on our review of the record.

Mother contends she is entitled to relief based on procedural irregularities (including the sudden cancellation of the DRC hearing) and the DRC's report and recommendation, which was inadequate and inaccurate in her view. We disagree.

Despite Mother's assertions that it appeared the DRC and Father's attorney had a close relationship, the DRC orally noted she was familiar with Father's attorney, who practiced locally but the DRC did not indicate they had any social or other close relationship based on our review of the DRC hearing. Moreover, the DRC acknowledged she was not as familiar with Mother's counsel, but the DRC also orally stated she thought Mother's counsel was doing well based on her observations of the hearing.

Thus, we discern no indication of bias or even appearance of impropriety based on our review of the DRC hearing. In fact, the DRC orally discussed how both parties had done well overall with timesharing at the end of the hearing. She also orally stated she found some of the parties' behavior concerning – including Father's not letting Mother see Child for three weeks.

We discuss the DRC's recommendation (including a factual error therein) in detail later in this Opinion. But we simply discern here that there was no indication of lack of impartiality, or the appearance of impropriety due to a

-14-

close relationship between Father's counsel and the DRC – based on our review of the written recommendation and in the DRC's conduct of the evidentiary hearing.

At most, the only anomaly of concern in terms of presenting an appearance of impropriety or lack of impartiality is the DRC's allegedly not contacting Mother's counsel simultaneously with Father's counsel to advise of the imminent cancellation of the hearing in time to correct the failure to pay the DRC fee so the scheduled hearing could go forward. (Again, Mother did not file an affidavit supporting Mother's allegation about the DRC's contacting only Father's attorney and not Mother's attorney prior to cancelling the hearing.)

Nonetheless, based on our review of the record, both parties' counsel received notice of the obligation to pay the DRC fee 24 hours prior to the hearing via the trial court's February 2023 order scheduling the late June 2023 hearing. This February 2023 order clearly stated that the cost of the DRC hearing must be paid into court 24 hours prior to the hearing and that failure to pay the fee prior to the hearing date would cause the hearing to be cancelled.

Certainly, assuming Mother's allegations are true, better practice would have been for the DRC to contact both parties' counsel with sufficient time to correct the failure to pay the DRC fee so the scheduled hearing could take place or to contact neither attorney before cancelling the hearing. But considering the prior trial court order informing both parties and their counsel of the obligation to

-15-

pay the DRC fee in advance and the consequences of not doing so, the DRC's failure to give both parties' counsel simultaneous notice of the impending cancellation for failure to pay the fee does not amount to reversible error here.

Courts must disregard any errors not affecting the parties' substantial rights and nothing done by the trial court or the parties is grounds for disturbing a judgment unless refusal to afford relief for the error is "inconsistent with substantial justice." CR[9] 61.01. Here, the hearing was rescheduled, and Mother has not shown that the cancellation of the first hearing or Father's counsel allegedly learning about that cancellation a day or so before her counsel learned of it impacted the trial court's substantive decisions.

In sum, though Mother adequately preserved this issue by raising it to the trial court, Mother is not entitled to relief on appeal based on her allegations of appearance of impropriety and/or lack of impartiality on the DRC's part. Next, we address her arguments about the alleged insufficiency of the evidence.

**Mother Is Not Entitled to Appellate Relief Based on Insufficient Evidence**

Mother contends the evidence is insufficient to support the DRC's recommendations and the trial court's conclusions about custody and

---

[9] Kentucky Rules of Civil Procedure.

timesharing.[10] Father points out Mother fails to cite any supporting legal authority in her discussion of this issue. He also contends she fails to provide specific references to the record showing where this issue was preserved for review.

Again, while Mother's failure to cite to specific page numbers in the written record or specific portions of video-recorded hearings is less than ideal, Mother's exceptions and objections to the DRC's recommended findings were easily located in the slim record and Mother alleged the same errors in the DRC's report and recommendations as she claims on appeal. In sum, we view this issue to be adequately preserved.

Not only is this issue adequately preserved, but we agree with Mother that one finding in the DRC's report and recommendation – which the trial court adopted – is clearly erroneous. Specifically, Mother correctly points out that the DRC's finding that Mother, Father, and Child all lived in Meade County before the parties separated is incorrect. Both parties testified that they (and Child) lived in Glasgow, Barren County prior to their separation. Also, Father stated in his verified petition for dissolution that Child had lived in Glasgow, Barren County from Child's birth until the present. (The petition was filed in October 2022.)

---

[10] Though Mother argues error in the trial court's conclusions about both custody and timesharing, we note the parties agreed to joint custody so the trial court essentially only resolved issues about timesharing, – including with which parent Child would primarily reside. *See generally Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008).

In sum, there is no substantial evidence to support the DRC's recommended finding (adopted by the trial court) that the parties and Child indisputably lived in Meade County until Mother left the residence and moved in with her parents in Cumberland County, thus causing Child to have to leave his only known home. However, while this specific finding is clearly erroneous, this finding is one among many findings underlying the trial court's decision to designate Father as the primary residential parent. And despite the clear error in this specific finding, this specific finding was not the sole reason why the DRC recommended Father be the primary residential parent or the trial court adopted this recommendation.

Instead, as noted in the trial court's somewhat terse order, the DRC discussed several factors listed in KRS 403.270 in her recommendation. Specifically, the DRC discussed and made findings regarding the wishes of each parent, Child's interactions and relationships with his parents and other persons affecting Child's best interests, the parties' motivations, the mental and physical health of the parties and Child, and the likelihood each party would permit the other frequent, meaningful, and continuing contact with Child.

The DRC's erroneous finding about the marital residence being in Meade County was set forth in the DRC's discussion of the factor of Child's adjustment and continuing proximity to his home, school, and community – in

which the DRC stated: "There is not a lot of evidence . . . to suggest whether this factor favors [Father] or [Mother]." (Page 3 of DRC's recommendation). In short, regardless of the clear factual error set forth in the discussion of this factor, the DRC apparently perceived this factor (about Child's adjustment and proximity to home and community) to not favor either Mother or Father. Moreover, given the other factual findings and explanations of the DRC's reasoning for her recommendation, the clear error in this one specific factual finding amounts to a harmless error which does not substantially affect Mother's rights, and which does not call for disturbing the trial court's judgment. *See generally* CR 61.01.

In fact, the DRC's recommendation that Father be the primary residential parent hinges primarily on findings of Father's work schedule permitting him more time with Child as well as Mother's engaging in actions which did not reflect well on her co-parenting capacity – such as her failure to timely facilitate Father's phone calls with Child during her parenting time. In short, the incorrect finding about the marital residence played little substantive role in the ultimate recommendation that Father be the primary residential parent.

Having addressed this clearly incorrect finding, we also recognize Mother correctly points out the DRC's recommendation does not discuss another undisputed point – Father's admittedly not permitting Mother to have contact with Child for about three weeks. Mother points out Father had offered no explanation

other than a subjective fear she would abscond with Child and yet the DRC failed to make any mention of this event. However, the DRC's recommendation does note Mother testified that Father allowed her frequent, meaningful, and continuing contact with Child since the entry of the temporary custody order in early November 2022. Although we do not endorse the failure of the DRC and the circuit court to directly address Father's refusal to allow Mother any contact with Child for three weeks, considering the other reasons given for designating Father as primary residential parent, the lack of explicit discussion of this event in the recommendation and order confirming the recommendation does not amount to reversible error.

In addition to the lack of discussion about Father's undisputed refusal to let Mother see Child for three weeks, Mother also complains that the DRC's recommendation fails to discuss Child's relationship with her and her family members in sufficient detail. However, the DRC did find Mother and her family had loving relationships with Child.

As Mother points out, Mother indisputably served as Child's primary caregiver prior to the parties' separation. Moreover, Mother asserts there was no evidence of her lacking the ability to parent Child or having substance abuse or anger issues and Father's brief does not argue to the contrary.

Mother also notes the DRC did not discuss Mother's father's testimony in the DRC's recommendation. Mother points out her father (Maternal Grandfather) testified Father was inattentive, ill-tempered, and did not take on caregiving responsibilities and had outbursts towards Child in Maternal Grandfather's presence. While the DRC did not discuss Maternal Grandfather's testimony in her written recommendation, Mother does not cite authority requiring that each witness's testimony be specifically discussed or that all evidence presented be discussed in detail. Presumably, the DRC focused on discussing the testimony which she found to be most determinative or persuasive regarding best interests. And regardless of whether we would assess witness credibility or weigh conflicting evidence differently, we must defer to the factfinder's assessment of the weight and credibility of the evidence, and we cannot disturb factual findings supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Mother also contends the DRC made an incorrect finding that Mother enrolled Child in Head Start without informing Father. Without directly addressing whether she discussed Child's enrollment with Father, Mother states the DRC's finding is incorrect because Head Start was only set up for the weeks when Mother had timesharing with Child under the original timesharing agreement.

The DRC had orally expressed concerns at the hearing that Head Start, a federally funded program, would not allow children to attend on a week-on, week-off basis. Mother's brief suggests she mistakenly used the words "Head Start" to refer to day care. Even so, the agreed order reflecting the parties' temporary timesharing arrangement required each party to notify the other of any use of childcare providers. Thus, we discern no abuse of discretion in the DRC's and the trial court's considering evidence of Mother's not informing Father of Child's enrollment in day care or Head Start regardless of whether the enrollment was intended to be on a full-time or part-time basis.

Mother also complains the DRC's timesharing recommendations (for Mother to have parenting time every other weekend) failed to maximize her time with Child and the DRC failed to make recommendations about phone calls or Facetime visits. She also contends that since the DRC did not recommend where exchanges occur, she was burdened by the application of local guidelines which required Mother to pick up and drop off Child in Meade County to exercise her parenting time. We note the trial court did amend the DRC's recommended timesharing provisions to allow for Mother to have Friday overnights with Child – thus affording Mother additional time with Child within the constraints imposed by Child's attending school and the distance between his parents' residences.

Mother suggests the sheer number of errors in the DRC's recommendation, in her estimation, warrants a thorough review by this Court and should have prompted the trial court to hear the matter anew before confirming the DRC's recommendation. Mother also suggests the trial court must not have carefully reviewed the matter since the trial court stated the DRC considered Child's wishes despite the DRC's noting Child did not express his wishes due to his young age. Despite the trial court's misstatement in this regard, its order correctly recognized that the DRC discussed the best interest factors set forth in KRS 403.270(2)(a)-(g). Moreover, the DRC and trial court acknowledged there was no evidence about factors set forth in KRS 403.270(2)(h)-(k) (concerning domestic violence and *de facto* custodians) so those factors did not apply here. In sum, the trial court considered applicable statutory factors and its erroneous statement about consideration of Child's wishes is, on these facts, a harmless error.

Certainly, we would have preferred that the trial court's written order confirming the DRC's recommendations in most regards offer more substantive and meaningful assessment of the specific issues raised by Mother in her objections and exceptions – which notably are nearly identical to those in her appellant brief. Nonetheless, based on our review of the record, the factual findings in the DRC recommendation (which the trial court adopted) are supported by substantial evidence – aside from the harmless error regarding the location of

the marital residence. And despite the trial court's misstatement about the DRC's consideration of Child's wishes and the lack of detailed discussion of many issues raised by Mother about the DRC's recommendation, we discern no abuse of discretion in the trial court's decision to designate Father as the primary residential parent based on the record before us. Moreover, to the extent that our reasoning differs from that of the trial court, we have the authority to affirm its judgment for any reason supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

Further arguments raised by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

While other adjudicators might have weighed the evidence of best interest factors differently, the factual findings adopted by the trial court are supported by substantial evidence and we discern no abuse of discretion in the decision to designate Father as the primary residential parent. Thus, we AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald L. Wilkerson III
Somerset, Kentucky

BRIEF FOR APPELLEE:

Harry B. O'Donnell IV
Louisville, Kentucky