RENDERED:  APRIL 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0924-MR

NARISSA HAEBERLIN                                                APPELLANT

v.      APPEAL FROM JEFFERSON CIRCUIT COURT
        HONORABLE A. CHRISTINE WARD, JUDGE
        ACTION NO. 24-CI-500516

Z.T.H., A MINOR; BETH HERALD;
AND KENTUCKY ATTORNEY
GENERAL                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KAREM, AND McNEILL, JUDGES.

COMBS, JUDGE:  Narissa Haeberlin appeals from that portion of a judgment of

Jefferson Family Court that established a parenting schedule for the parties.

Before us, Haeberlin seeks a determination that the family court erred either by

failing to accommodate her decision to relocate to Winter Park, Florida, or, in the

alternative, by failing to establish a tiered schedule that gradually expanded Z.T.H.'s parenting time with the child, D.H. After our review, we affirm.

Haeberlin and Z.T.H. (still a minor, who is the father of the child) were never married. They are the young parents of a toddler. Just weeks after the child was born, in February of 2024, Z.T.H. (through his mother) filed a petition seeking a determination of paternity, custody, parenting time, and child support. The parties agreed to a temporary parenting schedule that provided Z.T.H. with parenting time on Tuesdays and Thursdays after school until 8:00 p.m. and on Saturdays from noon until 7:00 p.m.

In September 2024, a temporary order was entered. Z.T.H.'s parenting time was expanded to include time with the child every Tuesday and Thursday from 3:00 p.m. to 6:00 p.m. and every other Friday from 3:00 p.m. through Sunday at 6:00 p.m. Because Z.T.H. was a minor, the court declined to enter a temporary child support order at this time.

Before the final hearing was conducted with respect to Z.T.H.'s petition for custody, Haeberlin filed a motion advising that she intended to relocate with the child to Winter Park, Florida, where she hoped to complete a bachelor's degree in gaming design. She sought an adjustment to the parenting-time schedule in order to facilitate the move. Haeberlin suggested that Z.T.H. be permitted to exercise his parenting time during the summer months.

At a hearing conducted on January 31, 2025, the court noted that the parties had agreed to a determination of paternity and joint custody. It heard testimony from several witnesses, including both parties, relating to the remaining disputed issues. It made extensive findings of fact and detailed conclusions of law. Judgment was entered on June 13, 2025.

With respect to Haeberlin's stated intention to relocate to Florida, the court determined that an initial custody decision involving relocation of a child to another state is governed by the child's best interest. Applying the factors outlined in the provisions of KRS[1] 403.270(2) and the statutory presumption in favor of an equal-time parenting schedule, the court concluded that relocation to Florida was not in the child's best interest. Moreover, it concluded that Z.T.H.'s parenting time should be expanded. The family court ordered that alternating weeks of a 2-2-3 plan be implemented, affording the parties equal time with the child. The court's order provided that if Haeberlin chose to relocate to Winter Park without the child, the parties could participate in mediation to modify the parenting-time schedule. Despite Z.T.H.'s minority, the court established each parties' child support obligation. The obligation resulted in a net transfer of $73.00 per month from Z.T.H. to Haeberlin for the child's benefit.

---

[1] Kentucky Revised Statutes.

In response, Haeberlin filed a timely motion to alter, amend, or vacate the court's judgment. In her motion, Haeberlin asked the court to amend the 2-2-3 alternating week schedule to grant Z.T.H. parenting time only during her "Summer and Holiday Breaks." In the alternative, she sought a schedule that would expand Z.T.H.'s parenting time more gradually over time.

The family court characterized Haeberlin's motion as an attempt merely to relitigate the issues and denied the motion. It remained satisfied with its findings of fact, the weight afforded to the testimony of each witness, and its characterization of the testimony presented. This appeal followed.

On appeal, Haeberlin argues that the family court erred by awarding the parties equal parenting time. She also contends that the family court's parenting schedule violates her constitutional right to relocate to Winter Park and to parent her child in Florida.

KRS 403.270(2) provides a statutory framework to guide a family court's initial decision concerning child custody. It provides as follows:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent

-4-

with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

KRS 403.270(2). *See also Frances v. Frances*, 266 S.W.3d 754, 758 (Ky. 2008) ("Although Appellant did relocate with the child, this case is not about the typical relocation questions of whether the relocation warrants a change of custody or of timesharing. Since this was the actual custody determination, the trial court had a clear directive to make its decision based on the best interests standard set forth in KRS 403.270.").

Pursuant to our rules of civil procedure, an appellate court may set aside a lower court's findings of fact only if those findings are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. Findings of fact are clearly erroneous where they are manifestly against the weight of the evidence. *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967). Where they are supported by substantial

evidence, findings of fact are not clearly erroneous. *Eagle Cliff Resort, LLC v. KHBBJB, LLC*, 295 S.W.3d 850, 853 (Ky. App. 2009). Substantial evidence is evidence sufficient to induce conviction in the mind of a reasonable person. *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005). Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court might have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

Evidentiary rulings are reviewed for abuse of discretion. *Capshaw v. Commonwealth*, 253 S.W.3d 557, 564 (Ky. App. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

Haeberlin contends that the family court erred by failing to afford proper weight to evidence related to Z.T.H.'s mental health. In its order, the trial court recounted the relevant evidence as follows:

> Z.T.H. currently attends counseling but, by his own testimony, consistently fails to take his prescribed mental health medications. Z.T.H.'s medical records reflect that he has been inconsistent with taking Wellbutrin, Buspar, and Trazadone, even allowing some of the prescriptions to lapse. [Haeberlin] indicated she has concerns with Z.T.H.'s Trazadone prescription as it is a sedative, used to help him sleep. Z.T.H. reported that [the child] never wakes during the night when he exercises parenting time. [Haeberlin] contradicted this testimony and believes that Z.T.H. is unable to wake when [the child] stirs through the nights. Z.T.H. admitted that he will likely be on the

above medications for life. However, he does not believe they affect his ability to safely care for the child.

In addition to the above concerns, Z.T.H. testified that he has had between five and eleven suicidal ideations annually since his freshman year of high school. Z.T.H.'s therapy records reflect that he previously had difficulty discerning reality from fiction and that he formerly suffered hallucinations. . . .

Z.T.H. disputes [Haeberlin's] concerns and maintains he is more than capable of adequately caring for their young child. Ms. Rebecca Hardin, Z.T.H.'s cousin, testified as to his caring and compassionate nature. Ms. Hardin's daughter passed away last year with cerebral palsy. She advised the Court that Z.T.H. consistently helped care for her daughter and would often stay weekends to assist her. She noted his protective nature.

Z.T.H. explained in his testimony that his hallucinations were connected to a medication that he no longer takes. But Haeberlin contends that medical records contradict that statement. She also argues that the court's order expanding Z.T.H.'s parenting time is internally inconsistent with its order providing that he not be alone with the child overnight while using medication that deepens his sleep.

As set out above, judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Moreover, as noted by Z.T.H., the record suggests that his ability to parent the child safely given his mental health issues is not Haeberlin's ultimate concern. He observes that she

-8-

was forthright about her intention to leave the child with him exclusively **if** the court's co-parenting decision interfered with her decision to move to Winter Park. He also emphasizes that she was comfortable with his exercising an extended period of exclusive parenting over each summer. It is clear from the record that the family court carefully evaluated the evidence related to the state of Z.T.H.'s mental health.

The court observed that Z.T.H., who resides with his parents, had consistently exercised parenting time as allowed. Furthermore, it acknowledged his commitment to participate regularly in therapy aimed at addressing his mental health. Additionally, the court ordered Z.T.H. to enroll in basic infant/toddler parenting classes; administer the child's prescription and over-the-counter medication in accordance with directions; have an adult with him when he parents overnight; and consult with a physician to determine whether a substitute medication can be prescribed so that he might be expected to awaken when the child stirs in the night. With these restrictions, the family court was satisfied that the state of Z.T.H.'s mental health would not interfere with his ability to care for the child safely. In light of the evidence adduced at trial, we cannot say that the court's determinations were erroneous.

Haeberlin next argues that the family court erred by expanding Z.T.H.'s parenting time because the level of conflict inherent in their relationship

means that the child's best interest will not be served by an equal parenting time arrangement. We disagree.

Pursuant to KRS 403.270(2), joint custody and equal parenting time are presumed to be in the child's best interest. Haeberlin acknowledges that statutory presumption. However, she believes that the presumption is overcome by the evidence indicating that Z.T.H. cannot cooperate with her to make joint decisions aimed at ensuring the child's well-being. She contends that "[t]he record demonstrates by more than a preponderance of the evidence that the presumption of joint custody and equal parenting time was rebutted."

Z.T.H. argues that the family court did not err by concluding that the parties could have the ability to cooperate and to co-parent despite a high degree of conflict between them. There is no evidence of explosive, abusive, or manipulative communication between them. However, direct communication between them was nearly non-existent and a poor pattern of conveying information had developed. For these reasons, Z.T.H. argues that case law recounting parents' inability to engage in joint decision-making is not relevant to their situation. Z.T.H.'s assertions are supported by the evidence and caselaw.

In this case, the family court found only that the parties' "current conflict **has strained their ability** to work with one another." (Emphasis added.) As a remedy, the parties were ordered to participate in co-parenting therapy until

-10-

released by a care provider. As the Kentucky Supreme Court noted in *Squires v. Squires*, 854 S.W.2d 765, 769 (Ky. 1993), the family court "should look beyond the present and assess the likelihood of future cooperation between the parents." In fact, the *Squires* Court deemed it "shortsighted" to conclude that where the parties have been antagonistic at a time of high stress that antagonism would continue indefinitely. *Id.*

We are not persuaded that the family court abused its discretion by finding that Z.T.H. exhibited a willingness to participate rationally in decisions affecting the upbringing of the child. Similarly, it did not abuse its discretion by forecasting that the parties' pattern of communication would likely improve and would not impair their ability to co-parent going forward.

Haeberlin also argues that the family court erred by allowing in evidence of her depression and her prior abusive relationships. She objects to the court's consideration of this evidence. She contends that it is unrelated to her mental health, to her ability to parent, or to the child's wellbeing. Z.T.H. argues that the evidence was not irrelevant and that the family court weighed *the entirety* of Haeberlin's testimony before reaching its conclusions.

In its findings of fact, the family court noted simply that "[Haeberlin] has suffered from depression." In its conclusions of law, the court explained that "[c]oncerns were raised regarding both party's [*sic*] mental health, including

-11-

Depression and past traumas." No more mention is made of Haeberlin's mental health. After considering Haeberlin's mental health *per se*, the court seemed more concerned about her ability to exercise good judgment -- especially with respect to her rather vague plan to relocate with or without the child to Winter Park, Florida. The court observed as follows: "testimony related to where [Haeberlin] would live, amenities offered in the area, and how life would be in general for [the parties' child] was minimal."

As noted above, KRS 403.270(2) does not provide an exhaustive list of factors for the court to consider. Evidence of a parent's decision-making skills is necessarily relevant to the best-interest analysis. *Gonzalez v. Dooley*, 614 S.W.3d 515, 522 (Ky. App. 2020). Under the circumstances, we cannot say that the family court erred by considering the testimony indicating that Haeberlin had been depressed at some point and that she had been subjected to trauma.

Haeberlin next argues that the family court erred by failing to consider that Z.T.H.'s real motivation in seeking expanded parenting time was simply to avoid paying child support. She denies that Z.T.H. was motivated by any desire to nurture the parent-child relationship.

Z.T.H. vehemently denies Haeberlin's allegations and points to his testimony explaining that he does not "want to give child support. Mostly I'd like [the child]." He reiterated to the court that if ordered, he would "do everything in

-12-

my power to pay it, yes." There is absolutely nothing to indicate that the family court abused its discretion with respect to this issue.

Next, we reject Haeberlin's contention that the trial court's refusal to grant her the exclusive right to parent the child during her school year infringes upon her constitutional right to travel to Winter Park, Florida. We also disagree with her contention that the family court's decision to expand Z.T.H.'s parenting time constitutes a "*de facto* restraint [upon her] by making relocation incompatible with [her] ability to exercise meaningful parenting time."

We note that the parties invited the family court to resolve their inability to establish a parenting schedule. Where they could not agree, the family court -- in a wholly proper exercise of its jurisdiction -- had authority to decide for them. *See Gonzalez*, 614 S.W.3d at 521 (quoting *Young v. Holmes*, 295 S.W.3d 144, 147 (Ky. App. 2009)) ("joint custodians['] . . . failure to agree ultimately resulted in their abdication of such a decision to the trial court") (quoted in *Lewis v. Lewis*, No. 2015-CA-001243-ME, 2016 WL 1273433, at *7 (Ky. App. Apr. 1, 2016)).

The family court concluded that Haeberlin failed to rebut the statutory presumption that equally shared parenting time meets the best interest of the parties' child. It did not err in that conclusion. We are not persuaded that it erred in refusing to grant Haeberlin nearly exclusive parenting time in Winter Park over

the course of the school year.  On the contrary, the court's decision balanced both the child's best interest and Z.T.H.'s right to parent -- on the one hand -- with Haeberlin's desire to attend school in Winter Park -- on the other.  Haeberlin was not denied any right to travel.  However, we do agree with Haeberlin that her "desire[] to relocate to Florida no matter what" makes it imperative that the family court set a parenting schedule that best accommodates the geographical distance between the parties.  Whenever Haeberlin's plans become more certain, she may certainly file a motion requesting the court to modify the parenting time to accomodate the circumstances.  The family court has broad discretion to order a modification in the parenting schedule.  *Layman v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020).

We affirm the judgment of the Jefferson Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Allen McKee Dodd               Ben Wyman
Louisville, Kentucky           La Grange, Kemtucky